UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JODY WELLS,

      Petitioner,                         Civil Action No. 2:10-cv-10191

v.                                    HON. ARTHUR J. TARNOW

BLAINE LAFLER,

      Respondent.
_____/

**OPINION AND ORDER DENYING
PETITION FOR A WRIT OF HABEAS CORPUS AND
DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY
BUT GRANTING PERMISSION TO FILE AN APPLICATION
FOR LEAVE TO PROCEED ON APPEAL *IN FORMA PAUPERIS***

## I. INTRODUCTION

This is a habeas case filed by a state prisoner under 28 U.S.C. § 2254. Petitioner Jody Wells is incarcerated by the Michigan Department of Corrections, currently housed at the Lakeland Correctional Facility in Coldwater, Michigan, where he is serving a life sentence for the murder of his wife, Nanette Lynn Wells, in April 2000. Petitioner's conviction occurred in the Circuit Court in Genesee County, Michigan, on September 22, 2000. He was sentenced on November 9, 2000.

Petitioner filed his Habeas Petition, *pro se*, raising claims concerning his rights under the Fifth Amendment, the prosecutor's failure to disclose favorable evidence, prosecutorial misconduct, and the ineffectiveness of appellate counsel. For the reasons stated, the Court will deny the petition. The Court also will decline to issue Petitioner a certificate of appealability but will grant him permission to file an application for leave to proceed on appeal *in forma pauperis*.

## II.  BACKGROUND

### A.  Substantive Facts

On April 13, 2000, Nanette Lynn Wells' body was found by her thirteen-year-old daughter.  Nanette Lynn Wells was killed by strangulation.

Several witnesses testified that, prior to her murder, Nanette Lynn Wells complained to them that Petitioner was too controlling.  She told them that she asked him for a divorce, but he said he did not want a divorce and threatened to kill her.

One of Petitioner's neighbors, Donald Fugate testified that, on the night in question, he heard Petitioner's truck leave Nanette Lynn Wells' driveway.  Another neighbor, Lori Anderson, also testified that she heard Petitioner's truck starting up and backing out of the driveway on the night of the murder.

The police found no signs of forced entry.  While at the scene, they discovered a note from Petitioner indicating that he was at his mother's house.  Evidence from the scene was collected.  DNA analysis revealed that the bloodstains found on the victim's pillow matched that of Petitioner's.

Petitioner was subsequently arrested.  He had fresh scratch marks on his upper right forearm.  While in the holding facility, he spontaneously confessed to the killing.

Darcie Burch, who was employed at the Flint City lock up, was making her routine rounds, when she heard a man causing a disturbance in cellblock G, where Petitioner was being held.  Petitioner was not the man causing the disturbance.  Burch testified that she recognized Petitioner because they previously lived in the same neighborhood.  She said to Petitioner,

2

"hey," and Petitioner "blurted out that he [] killed his wife." Trial Tr. vol. VI 152-56, Sept. 20,

2000, ECF No. 12-12. Burch walked away. She did not ask Petitioner any questions.

Witnesses for the defense stated that they saw Petitioner at his mother's house between

5:30 a.m. and 6:00 a.m., on the day of the murder. One of the witnesses testified that he saw

Petitioner's truck in the driveway around 10:30 p.m. Petitioner's mother testified that he was at

her house on the night of April 12, 2000. She said she saw him sleeping in one of the bedrooms

when she woke to use the bathroom. She said she woke him up around 4:45 a.m. Another

witness, who worked with Petitioner, testified that he did not notice anything unusual about him

that day.

Petitioner did not testify. The jury convicted him and he was sentenced to life in prison.

## B. Procedural Facts

Following his sentencing, Petitioner filed a direct appeal with the Michigan Court of

Appeals, raising the following claims: (1) the admission of his alleged confession to a guard at

the holding facility was improper; (2) the prosecutor failed to provide timely discovery; (3) the

trial court erred in admitting character evidence; (4) the trial court erred in excluding evidence of

a personal protection order against the victim's former husband; (5) the trial court erred in

prohibiting him from presenting an expert witness on police investigations; (6) the evidence was

insufficient to support his conviction; and (7) the prosecutor committed misconduct during

closing argument. The Court of Appeals affirmed his conviction and sentence. *People v. Wells*,

No. 23634, 2003 WL 21079864, at *1, 5 (Mich. Ct. App. May 13, 2003). Petitioner never

appealed that decision to the Michigan Supreme Court.

Rather, on October 16, 2006, Petitioner filed a motion for relief from judgment, with the state trial court, raising the following claims: (1) his conviction is invalid because of the improper analysis of evidence presented by the prosecution; (2) the trial court erred in failing to admit certain exculpatory evidence; (3) the cumulative effect of the trial court's errors denied him a fair trial; and (4) he has established cause and prejudice for his failure to raise these claims in his direct appeal.  The trial court denied Petitioner's motion on August 20, 2007.  *People v. Wells*, No. 00-06041-FC (Genesee Cnty. Cir. Ct. Aug. 20, 2007).  Both state appellate courts denied his applications for leave to appeal that decision because he failed to "meet the burden of establishing entitlement to relief under MCR 6.508(D)."  *People v. Wells*, No. 285455 (Mich. Ct. App. July 25, 2008); *People v. Wells*, 483 Mich. 893, 760 N.W.2d 488 (2009).

Petitioner filed his habeas petition on January 15, 2010.  It was signed and dated January 7, 2010.

### III.  STANDARD OF REVIEW

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law,

or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when a state court has applied clearly established federal law in an objectively unreasonable manner. *Id.* at 409. A federal habeas court may not issue a writ if it concludes the state court applied clearly-established federal law merely erroneously or incorrectly. *Id.* at 411.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. ---, ---, 130 S.Ct. 1855, 1862 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. ---, ---, 131 S.Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized that "[i]t bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington*, 131 S.Ct. at 786 (citation omitted). Indeed, "[s]ection 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington*, 131 S.Ct. at 786 (citing *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is

5

required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

A state court's factual determinations are presumed correct on federal habeas review. 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. ---, ---, 131 S.Ct. 1388, 1398 (2011).

With those standards in mind, the Court proceeds to address Petitioner's claims.

## IV.  DISCUSSION

### A.  Petitioner's Claims Are Unexhausted and Procedurally Defaulted

Petitioner is required to fairly present all of his claims outlined in this petition to the state courts before he presents them to this Court in a habeas action. Under section 2254(b)(1), Petitioner cannot be granted habeas relief unless the following has occurred:

(A) [he has] exhausted the remedies in the courts of the State; or

(B) (i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of [Petitioner].

In this case, the Court finds that Petitioner's claims, as outlined in his habeas petition, are unexhausted, because he never filed an application for leave to appeal from the Court of Appeals's opinion denying his claims in his direct appeal with the Michigan Supreme Court. And, because the time for filing an application for leave to appeal with the Supreme Court has

expired, he can no longer present these claims to that state appellate court.[1]  Petitioner also cannot present his claims to the state courts because he already filed his motion for relief from judgment with the state trial court in which he did not raise these claims but rather raised different claims.  The Michigan court rules only allow Petitioner to file one motion for relief from judgment with the state trial court.[2]

To fulfill the exhaustion requirement, a prisoner filing a petition for a writ of habeas corpus under section 2254 must first exhaust all state remedies.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("state prisoners must give the state courts one full fair opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).  To satisfy the exhaustion requirement, a petitioner "must have 'fairly presented' the substance of each of his federal constitutional claims to the state courts."  *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004) (citing *Hannah v. Conley*, 49 F.3d 1193, 1196 (6th Cir. 1995)).  A petitioner "fairly presents" his claim to the state courts by either (1) relying upon federal cases employing federal constitutional analysis; (2) relying upon state cases employing such an analysis; (3) phrasing the claim in terms of federal constitutional law; or (4) alleging facts within the mainstream of federal constitutional law.  *Clinkscale*, 375 F.3d at 437 (citations omitted).  A petitioner must fairly present his claims at each level of state-court review.  *See O'Sullivan*, 526 U.S. at 845-47; *see also Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990) (same).  The Sixth Circuit has held

---

[1]See Mich. Ct. R. 7.302(C)(3) (a delayed application may not be filed more than fifty-six days after the Court of Appeals's decision).

[2]See Mich. Ct. R. 6.502(G)(1) (only one motion for relief from judgment may be filed with regard to a conviction).

that the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court. *See Pillette v. Holtz*, 824 F.2d 494, 497 (6th Cir. 1987).

In Petitioner's case, because he did not present his claims based on the same factual predicate or same legal theory in the State's highest appellate court, his claims are unexhausted and remain unexhausted for which no remedy exists. Under these circumstances, where no further avenues to present a claim exist, the claim is deemed technically exhausted, and the question becomes solely whether the claim is barred by a procedural default. *See Broom v. Mitchell*, 441 F.3d 392, 399-400 (6th Cir. 2006).

Respondent argues that Petitioner has no further avenue of state-court review for these claims because he has already filed one motion for relief from judgment, and he is prohibited from filing a second such motion. See Mich. Ct. R. 6.502(G)(1). Thus, Respondent contends that his claims are procedurally defaulted. The Court agrees.

Nevertheless, the Court may reach the merits of Petitioner's procedurally-defaulted claims if he is able to establish cause and prejudice or a fundamental miscarriage of justice. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate cause, he must establish that some factor external to his defense impeded counsel's efforts to comply with a state's procedural rule. *Id.*

Here, Petitioner cannot establish cause because he has not shown the existence of an external factor that impeded him from raising his claims in his motion for relief from judgment and his subsequent appeals. Petitioner's *pro se* status and ignorance of his rights do not constitute cause for failure to raise his constitutional claims in the state courts. *Hannah*, 49 F.3d

8

at 1197 (6th Cir. 1995) (citing *Ewing v. McMackin*, 799 F.2d 1143, 1151 (6th Cir. 1986)).

Petitioner also cannot argue ineffective assistance of counsel to demonstrate cause because he

was not constitutionally entitled to counsel beyond his initial appeal with the Court of Appeals.

*Coleman v. Thompson*, 501 U.S. 722, 757 (1991).  The choice not to pursue his claims in the

Michigan Supreme Court was Petitioner's alone.  Thus, the Court finds that Petitioner is unable

to establish cause.

If a petitioner fails to show cause for his procedural default, it is unnecessary for a court

to reach the prejudice issue.  *Smith v. Murray*, 477 U.S. 527, 533 (1986).  However, in this case,

Petitioner would be unable to establish prejudice even if he were able to establish cause.

To establish prejudice, Petitioner must show that the errors "worked to his *actual* and

substantial disadvantage, infecting his entire trial with error of constitutional dimensions."

*United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original); *see also Haylim v.*

*Mitchell*, 492 F.3d 680, 690-91 (6th Cir. 2007) (quoting *Murray*, 477 U.S. at 488).  There is no

prejudice where the petitioner does not show a reasonable probability of a different verdict.

*Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003).

Petitioner cannot establish prejudice because there was overwhelming evidence of his guilt, his

blood was found on the victim's pillow.

Petitioner also cannot establish that failure to review his claims would result in a

fundamental miscarriage of justice.  This narrow exception must accompany a credible claim of

factual innocence.  *Schlup v. Delo*, 513 U.S. 298, 324 (1995).  To be credible, such a claim of

innocence requires Petitioner to support his allegations of constitutional error with new, reliable

evidence that was not presented at trial.  *Id.*  Because Petitioner has not protested his guilt with

an offer of new, reliable evidence, he cannot establish that the Court's failure to review his claims would result in a fundamental miscarriage of justice.

Thus, the Court finds that review of Petitioner's claims is barred by his procedural default and his inability to establish cause and prejudice to excuse the default or that a fundamental miscarriage of justice would occur in failing to review his claims.

Although the procedural default in this case is clear, the Court nevertheless also addresses the merits of Petitioner's claims and finds that they lack merit. *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) (holding that the district court has discretion to ignore a procedural default and proceed directly to the merits of an apparently defaulted claim); *see also Mahdi v. Bagley*, 522 F.3d 631, 635 (6th Cir. 2008).

### B.  Merits of Claims

### 1.  Fifth-Amendment claim

In his first habeas claim, Petitioner contends that the admission into evidence his statement "I killed my wife" was in violation of his Fifth Amendment right against self-incrimination because it was made while he was in custody without having been advised of his *Miranda*[3] rights.  The Court of Appeals addressed this claim, and rejected it, finding that the trial court did not err in admitting the statement because it "was a spontaneous utterance, and not a statement made pursuant to police interrogation."  *Wells*, 2003 WL 21079864, at *1.  Thus, *Miranda* warnings were not required.  *Id.*  The Court finds that the Court of Appeals's decision is not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

---

[3]*Miranda v. Arizona*, 384 U.S. 436 (1966).

In *Miranda*, the Supreme Court considered the applicability of the Fifth Amendment's Self-Incrimination Clause to custodial interrogations by the police.  The Supreme Court ruled that, in some circumstances, statements made while in custody can violate the Self-Incrimination Clause, even if the statement was otherwise "voluntary" under the Due Process Clause.  *Miranda* is applicable only where there has been a custodial "interrogation," which the Supreme Court has defined as "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect."  *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).  By its own terms, *Miranda* does not apply to volunteered statements.  *Miranda*, 384 U.S. at 478 (the fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel but whether he can be interrogated).  Thus, "statements voluntarily initiated by defendants, absent police interrogation or its functional equivalent, are admissible even in the absence of *Miranda* warnings."  *United States v. Campbell*, 609 F. Supp. 2d 674, 689 (E.D. Mich. 2009) (Rosen, J.).

In this case, however, there was no custodial interrogation of Petitioner at the time he made his statement.  Rather, the record shows that his statement was a spontaneous utterance made by him at the time Burch was investigating a disturbance in the cellblock.  *Miranda*, thus, did not bar its admission.  Further, nothing in the record suggests that there were any circumstances existing at the time of the statement which overbore Petitioner's will which would render his statement involuntary.

11

Accordingly, because Petitioner's statement was spontaneous and volunteered, it was not made it violation of his constitutional rights.  The Court therefore concludes that he is not entitled to habeas relief with respect to this claim.

### 2. *Brady* claim

In his second habeas claim, Petitioner argues that the prosecution failed to provide him with timely discovery, contrary to *Brady v. Maryland*, 373 U.S. 83 (1963).  Petitioner alleges that the prosecutor failed to provide him with the names of the inmates who were in close proximity to him when he was in the holding cell where he stated to Burch that he had killed his wife, and that defense counsel did not receive the autopsy report in a timely fashion.

To the extent that Petitioner is alleging that the prosecutor violated state discovery rules or law, his claim is not cognizable on federal habeas review.  Habeas relief may not be based on perceived errors of state law.  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Claims that the prosecutor violated state discovery rules is not cognizable in federal habeas review because it is not a constitutional violation.  *Lorraine v. Coyle*, 291 F.3d 416, 441 (6th Cir. 2002); *see also Meade v. Lavigne*, 265 F. Supp. 2d 849, 867 (E.D. Mich. 2003) (Tarnow, J.) (same).

Petitioner cannot demonstrate that he was denied a fair trial because the prosecutor suppressed favorable evidence.  In *Brady*, the Supreme Court established that a prosecutor's failure to disclose evidence favorable to the defense constitutes a denial of due process "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  *Brady*, 373 U.S. at 87.  To demonstrate a *Brady* violation, a habeas petitioner must establish the following three elements: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must

12

have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

The Court of Appeals addressed this claim under the *Brady* standard and found that the record established that the prosecutor did in fact provide Petitioner with discovery in a timely fashion. At the pretrial hearing, the prosecutor informed the trial court and defense counsel that he had provided defense with all the information that was available to him. The prosecutor stated that defense counsel had received all available information about the names of the individuals in the same cellblock as Petitioner. Also, the videotapes of the activity in the cellblocks had been saved and were available to the defense.

Furthermore, at the evidentiary hearing held on August 11, 2000, the prosecutor stated that he did not receive the autopsy report until July 11, 2000, and defense counsel acknowledged receiving the report on July 12, 2000. Petitioner's trial began on September 12, 2000. Thus, defense counsel was provided with the report in a timely fashion.

The Court of Appeals found that the record clearly indicated that the trial court provided Petitioner with the opportunity to conduct full discovery and rejected Petitioner's claims. *Wells*, 2003 WL 21079864, at *1-2 (citations omitted). This Court concludes that that decision is not contrary to, or an unreasonable application of, *Brady*. Petitioner is not entitled to habeas relief on this claim.

### 3. Prosecutor-misconduct claim

In his third habeas claim, Petitioner claims that the prosecutor committed misconduct during closing argument. The prosecutor improperly commented on his exercise of his right to remain silent and his remarks with respect to DNA testing.

13

It is well established that prosecutors must "'refrain from improper methods calculated to produce a wrongful conviction.'" *United States v. Young*, 470 U.S. 1, 7 (1985) (quoting *Berger v. United States*, 295 U.S. 78, 88 (1935)). However, "[c]laims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citation omitted). Prosecutorial misconduct will form the basis for a new trial and habeas relief only if the alleged misconduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "To constitute a denial of due process, the misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial.'" *Byrd v. Collins*, 209 F.3d 486, 529-30 (6th Cir. 2000) (citation omitted). "The Court must examine 'the fairness of the trial, not the culpability of the prosecutor.'" *Serra v. Michigan Dep't of Corrs.*, 4 F.3d 1348, 1355 (6th Cir. 1993).

When assessing such a claim, the Court first considers whether the prosecutor's conduct or remarks were improper. *Slagle v. Bagley*, 457 F.3d 501, 515-16 (6th Cir. 2006). If they were, the Court then must decide whether the improper acts were so flagrant as to warrant relief. *Id.* at 516. The Sixth Circuit applies a four-factor test to any inappropriate prosecutorial conduct to determine whether it was flagrant: "(1) whether the evidence against the defendant was strong, (2) whether the conduct of the prosecution tended to mislead the jury or prejudice the defendant; (3) whether the conduct or remarks were isolated or extensive; and (4) whether the remarks were made deliberately or accidentally." *Id.* (citation omitted). The Sixth Circuit "has been reluctant to grant

14

habeas petitions based on improper prosecutorial statements at closing argument. *Wilson v.*

*Mitchell*, 250 F.3d 388, 399 (6th Cir. 2001).

> During closing argument, the prosecutor argued:
>
> [PROSECUTOR]: And then you have what happens afterwards. The police tell him your wife's dead. How's a person going to react, being told their wife's dead. Well, the defendant already knew she was dead. But he didn't cry. He didn't give any emotion. He cooperated, but he didn't give any emotion. The police arrest him, put then handcuffs on him. There's going to be accountability for what you did. Then he cried.
>
> The police say we want to talk to you. We want to get some information from you. You're not talking to me, says the defendant. I want to remain silent. I want the right to talk to my attorney. He's not cooperating.
>
> [DEFENSE COUNSEL]: We'd object at this point.
>
> THE COURT: One second, Mr. Berkman.
>
> [DEFENSE COUNSEL]: We'd object to the prosecutor commenting on the defendant's constitutional right.
>
> THE COURT: I'm going to sustain that objection, Mr. Berkman.

Trial Tr. vol. III 99-100 Sept. 22, 2000, ECF No. 12-14.

> The Court of Appeals analyzed this claim and concluded that:
>
> Although the prosecutor improperly commented on [Petitioner's] exercise of his right to remain silent, [], the trial court sustained defense counsel's objection to the challenged remark. Further, the court instructed the jury that defendant had the right to remain silent and that his silence could not be used against him. Thus, it is not more probable than not that the prosecutor's improper statement was outcome determinative or resulted in a miscarriage of justice.
>
> The prosecutor's remarks regarding DNA testing were responsive to defense counsel's remarks attacking the validity of the DNA on the ground that only eight of the twenty bloodstains were tested. Considered in this context, they were not improper. Further, any perceived error was cured by the trial court's proper instruction concerning the burden of proof.

*Wells*, 2003 WL 21079864, at *5 (citations omitted).

15

The Court agrees with the Court of Appeals and finds the prosecutor's comment improper.  However, his comment does not rise to the level of denying Petitioner a fair trial.  The prosecutor's comment was one isolated moment during a trial that lasted eight days.

In *Doyle v. Ohio*, 526 U.S. 610, 619 (1976), the Supreme Court held that the Due Process Clause prohibits the prosecution from using a defendant's post-*Miranda* silence to impeach his exculpatory story told for the first time at trial.  However, if a defendant opens the door to government questioning by his own remarks about his post-arrest behavior, the prosecution may use that silence for the limited purpose of impeaching his testimony about what he did after his arrest.  *Id.* at n.11.

At trial, defense counsel attempted to exculpate Petitioner when he was cross-examining one of the officers with respect to whether suspects in homicide cases generally flee the scene as opposed to returning and by evidence of Petitioner "sobbing."  Defense counsel was attempting to portray Petitioner as innocent by his returning to the scene when requested to do so.  Defense counsel asked the officer whether Petitioner had requested an attorney or whether he was able to question him.  With that, the trial court advised counsel against opening that door but counsel said he wanted the jury to know that Petitioner had invoked his right to remain silent.  Defense counsel then stipulated to enter evidence that Petitioner had invoked his *Miranda* rights.  Thus, the prosecutor had the right to comment; he was responding to the contention that Petitioner was cooperative because he returned to the scene.  The prosecutor was not referring to Petitioner's silence so that the jury would draw "inferences of guilt from [the] defendant's decision to remain silent after . . . arrest."  *See Gravely v. Mills*, 87 F.3d 779, 788 (6th Cir. 1996).  Further, the trial court properly instructed the jury that Petitioner had the right to silence and his silence during

16

2:10-cv-10191-AJT-DAS   Doc # 22   Filed 02/28/13   Pg 17 of 21   Pg ID 2388

trial could not be considered against him during deliberations.  Trial Tr. vol. VIII 167, ECF No.

12-14.  The jury was clearly instructed that Petitioner's silence was not substantive evidence of

guilt.

Thus, the Court finds that considering the single comment here and the fact that a

curative instruction was given by the trial judge was sufficient to show that the comment did not

have a substantial and injurious effect or influence in determining the jury's verdict.  *Brecht v.*

*Abrahamson*, 507 U.S. 619, 637 (1993) (a federal court can grant habeas relief only if the trial

error had a substantial and injurious effect or influence upon the verdict).

Petitioner next claims that the prosecutor's comments regarding DNA testing were

improper.  During closing arguments, defense counsel attacked the validity of the DNA

testing on the basis that only eight out of twenty bloodstains were tested.  During rebuttal

argument, the prosecution responded to that attack:

> And I thought about this situation.  You know, we submitted eight for
> testing, because there are time constraints and there are quantitative constraints on
> how many you can submit at once, and in fact, the defendant has a right to a
> speedy trial.  We can't fight those constraints.  But if defense wants further stains
> to be tested, yeah, they can do it.  If defense wants any of the tested stains
> retested, they can do it and they're free.  But did the defense ask for any of that?
> No.

Trial Tr. vol. VIII 160, ECF No. 12-14.

Defense counsel objected on the ground that the prosecutor was attempting to shift the

burden of proof.  The trial court then instructed the jury that the defense does not have the

burden of proof.  The jurors are presumed to follow the court's instructions.  *United States v.*

*Powell*, 469 U.S. 57, 66 (1984) (jurors take an oath to follow the law as charged and they are

expected to follow it).  Moreover, the prosecutor acknowledged that he has the burden of proof

17

and that he was not attempting to shift that burden but rather, he was talking about the testimony and the evidence as a direct response to the defense challenge.

The Court concludes that Petitioner has not established that the prosecution erred or that Petitioner was denied a fundamentally fair trial. The Court of Appeals's decision is not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. Habeas relief is not warranted on this claim.

### 4. Ineffective-assistance-of-appellate-counsel claim

In his final habeas claim, Petitioner alleges that appellate counsel was ineffective because he filed the same brief with the trial court when he filed his motion for a new trial as he did in the Court of Appeals. He also claims that appellate counsel failed to include other claims that should have been filed but he fails to name those claims.

The right to the effective assistance of counsel includes the right to the effective assistance of appellate counsel. *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To prevail on a claim of ineffective assistance of appellate counsel, the petitioner must demonstrate that appellate counsel's performance was deficient and that the deficient performance prejudiced the appeal. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Appellate counsel enjoys a strong presumption that the alleged ineffective assistance falls within the wide range of reasonable professional assistance. *See Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003). It is not necessary for appellate counsel to raise every non-frivolous claim on direct appeal. *Smith*, 477 U.S. at 536.

When evaluating the issue of ineffective assistance of appellate counsel, prejudice is shown if there is a reasonable probability that, but for his counsel's failings, the defendant would

18

have prevailed on his appeal. *Evans v. Hudson*, 575 F.3d 560, 564 (6th Cir. 2009) (citing *Mapes v. Tate*, 388 F.3d 187, 194 (6th Cir. 2004)). A "reasonable probability" is a probability sufficient to undermine the court's confidence in the outcome. *Id.* at 564-65. To evaluate a claim of ineffective assistance of appellate counsel, the court assesses the strength of the claim appellate counsel failed to raise. *Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008). "Counsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004).

Petitioner's claim of ineffective assistance of appellate counsel fails. Appellate counsel raised several issues in Petitioner's direct appeal, and the Court of Appeals issued a lengthy opinion ruling on those issues. While Petitioner's appellate counsel did not raise every conceivable claim, the Supreme Court has held that failure to raise every colorable argument does not constitute ineffective assistance of counsel. *Jones*, 463 U.S. at 753. Petitioner's claim therefore lacks merit and he is not entitled to habeas relief.

### C. Certificate of Appealability

"[A] prisoner seeking post[-]conviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition. Instead, [the] petitioner must first seek and obtain a [Certificate of Appealability.]" *Miller-El*, 537 U.S. at 327. A Certificate of Appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong . . . . When the district court denies a

19

habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [Certificate of Appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court finds that reasonable jurists could not debate its resolution of Petitioner's claims. Therefore, the Court declines to issue Petitioner a COA.

Although the Court declines to issue Petitioner a COA, the standard for granting an application for leave to proceed *in forma pauperis* (IFP) is a lower standard than the standard for COAs. *See Foster v. Ludwick*, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002) (citation omitted). Whereas a COA may only be granted if a petitioner makes a substantial showing of the denial of a constitutional right, a court may grant IFP status if it finds that an appeal is being taken in good faith. *Id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R. App. 24 (a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. *Foster*, 208 F. Supp. 2d at 765. Therefore, the Court concludes that an appeal could be taken in good faith and Petitioner may proceed IFP on appeal. *Id.*

## V.  CONCLUSION

IT IS ORDERED that Petitioner's Petition for Writ of Habeas Corpus [ECF No. 1] is DENIED WITH PREJUDICE.

IT IS FURTHER ORDERED that the Court declines to issue Petitioner a COA with respect to all of his claims.

IT IS FURTHER ORDERED that Petitioner is GRANTED permission to file an

application for leave to proceed on appeal IFP.

SO ORDERED.

S/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge

Dated: February 28, 2013

I hereby certify that a copy of the foregoing document was served upon parties/counsel of record
on February 28, 2013, by electronic and/or ordinary mail.

S/Catherine A. Pickles
Judicial Assistant